FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Mar 29, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MICHELLE D.,[1]

                    Plaintiff,

          v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                    Defendant.

No.    4:22-cv-3047-EFS

**ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND AFFIRMING THE ALJ**

Plaintiff Michelle D. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the ALJ's challenged findings were explained and supported by substantial evidence, the ALJ's decision is affirmed.

## I.    Five-Step Disability Determination

A five-step evaluation determines whether a claimant is disabled. Step one assesses whether the claimant is engaged in substantial gainful activity.[2] Step two assesses whether the claimant has a medically severe impairment or combination

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] 20 C.F.R. §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[3] Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[4] Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[5] Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[6]

## II.    Background

On August 22, 2018, Plaintiff filed Title 2 and 16 applications alleging disability because of mental and physical impairments.[7] Plaintiff had a traumatic childhood, causing depression, post-traumatic stress disorder (PTSD), and anxiety. In addition, due to motor vehicle accidents, Plaintiff suffers from neck and back

---

[3] *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c).

[4] *Id.* §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

[5] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[6] *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g).

[7] AR 304–27. Both parties state that the relevant disability period is from August 22, 2018, to the date of the ALJ's decision, March 17, 2021. ECF No. 14 at 2, 13; ECF No. 15 at 1.

pain. Plaintiff has a high school education and worked as a social services aide, as a retail salesclerk, and in a composite job of food deliverer, kitchen helper, and dining room attendant.

After the agency denied her applications initially and on reconsideration, Plaintiff requested a hearing before an ALJ.[8] ALJ Shane McGovern held a telephonic hearing in December 2020, during which Plaintiff and a vocational expert testified.[9] After the hearing, the ALJ denied Plaintiff's disability applications.[10] As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since June 1, 2012, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: lumbar spine spondylosis, lumbar and cervical spine degenerative disc disease (DDD), PTSD, major depressive disorder, stimulant use disorder, cannabis use disorder, decreased hearing (worse on the left side), obesity, panic disorder, and methamphetamine use disorder in early reported remission.

---

[8] AR 217–23, 230–43, 245–53.

[9] AR 75–125.

[10] AR 13–36.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work except:

  > she cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. She can have no exposure to moving mechanical parts or unprotected heights. She can work at no more than a moderate noise intensity level . . . . She is limited to no more than frequent overhead and forward reaching. Such work should be uncomplicated enough that it can be learned within 30 days. Work should not involve hourly quotas or conveyor belts. Work should involve no more than occasional simple workplace changes.

- Step four: Plaintiff was unable to perform past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as photocopy machine operator, housekeeping cleaner, and office helper.[11]

In reaching his decision, the ALJ found:

- the reviewing opinions of Jan Lewis, Ph.D., and Carol Moore, Ph.D., persuasive.

---

[11] AR 16–30.

- the examining opinions of William Drenguis, M.D., and Karen Mansfield-Blair, Ph.D., and the reviewing opinion of Louis Martin, M.D., partially persuasive.

- the reviewing opinion of Wayne Hurley, M.D., and the examining opinion of Tasmyn Bowes, PsyD., not persuasive.[12]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence."[13]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[14] Plaintiff timely appealed to the Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[15] The Commissioner's decision is set aside "only if it is not supported by substantial

---

[12] AR 25–28.

[13] AR 23. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[14] AR 1–6.

[15] 42 U.S.C. § 405(g).

evidence or is based on legal error."[16] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[17] Because it is the role of the ALJ to weight conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[18] Further, the Court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination."[19]

## IV.    Analysis

### A.    Symptom Reports: Plaintiff fails to establish consequential error.

Plaintiff claims she has difficulty sitting, standing, walking, lifting, bending, kneeling, and climbing stairs due to neck and back pain. She also claims that she

---

[16] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[17] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[18] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[19] *Molina*, 674 F.3d at 1115 (cleaned up).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

has difficulty with memory, concentrating, understanding, following instructions, and getting along with others.

When evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ is to consider several factors, including the claimant's daily activities, pain or other symptoms, medication, and other treatments and measures to relieve pain or other symptoms.[20] Here, the ALJ found Plaintiff was not malingering, but that her statements concerning the intensity, persistence, and limiting effects of her physical and mental symptoms were not entirely consistent with the objective medical findings, the treatment modalities, the treatment record as a whole, her statement to the consultative examiner, and her daily activities.[21]

Plaintiff argues the ALJ's analysis failed to provide "specific, clear and convincing" reasons supported by substantial evidence for discounting her symptoms. The Court looks at each articulated reason in turn.

///

//

/

---

[20] 20 C.F.R. §§ 404.1529(c), 416.929(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Soc. Sec. Rlg. 16-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims.

[21] AR 23–24.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1.    Physical Symptoms

a.    *Objective Findings*

Objective medical evidence—signs, laboratory findings, or both—is a relevant factor for the ALJ to consider when assessing a claimant's symptoms.[22] While an ALJ may not "reject a claimant's subjective complaints based *solely* on lack of medical evidence to *fully corroborate* the alleged severity of pain," the ALJ may discount subjective complaints that are *inconsistent* with the objective medical evidence."[23]

Here, the ALJ found Plaintiff's reports of difficulty sitting and walking and of neck and back pain inconsistent with the medical records that showed that Plaintiff maintained good functionality despite her alleged pain. The ALJ recognized that the imaging revealed moderate to moderately severe degenerative changes in the mid and lower cervical spine and that Plaintiff was observed with tenderness and decreased range of motion in her cervical and lumbar spine on examinations. But the ALJ noted that despite these findings, Plaintiff did not use an assistive device and was regularly observed with normal gait and coordination, full strength in her extremities, normal muscle bulk and tone, and intact

---

[22] 20 C.F.R. § 416.902(k); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[23] *Smartt*, 53 F.4th at 498 (quoting *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (emphasis added in *Smartt*)).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

sensation.[24] The records reflect that Plaintiff's cervical and lumbar impairments caused tenderness and reduced lumbar motion, but the record does not reflect that they routinely impacted her gait, strength, and muscle tone.[25] And during her consultative examination with Dr. Drenguis, he observed her walking the 40 feet from the waiting room to the exam room without difficulty, sitting comfortably, and rising from a chair without assistance.[26] The ALJ clearly explained why he found Plaintiff's physical functionality did not corroborate her reported back and neck symptoms—and these findings are supported by substantial evidence.

b.   *Treatment Modalities*

An ALJ may discount a claimant's reported symptoms if they improve with treatment.[27] Reports of improvement "must be interpreted with an understanding of the patient's overall well-being and the nature of [her] symptoms," as well as with an awareness that "improved functioning. . . does not always mean that a

---

[24] AR 23.

[25] *See, e.g.*, AR 923, 952, 1076, 1107, 1122, 1126, 1141, 1420 (normal gait and station); AR 900–01 (exhibiting normal gait, ability to tandem walk, walk on heels and toes, stand on a single foot, and hop, and 5/5 strength in all major muscle groups of upper and lower extremities); AR 892 (normal strength).

[26] AR 899.

[27] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999).

claimant can function effectively in a workplace."[28] In addition, a claimant's course of treatment, including an inadequately explained failure to seek treatment, is a relevant factor for the ALJ to consider when assessing the claimant's symptom reports.[29]

Here, the ALJ found that treatment for Plaintiff's back and neck impairments had been limited.[30] The ALJ highlighted that Plaintiff had been referred to physical therapy but there was no evidence that she received any physical therapy to relieve her back and neck pain. The ALJ also noted that Plaintiff had only been using Tylenol on an as needed basis for her pain, and that the prescribed anti-inflammatory Meloxicam helped stabilize her pain.

Plaintiff argues it was error for the ALJ to discount Plaintiff's back and neck pain for not taking opiate prescription medication, as she is a recovering heroin and meth addict. However, that is not what the ALJ did. The ALJ simply noted that Plaintiff had told Dr. Drenguis during the February 2019 consultative examination that she was not taking prescribed medication, instead taking Tylenol on an as needed basis.[31] The ALJ then noted that Plaintiff had been prescribed Meloxicam, an anti-inflammatory, for her back pain and that Plaintiff's back pain

---

[28] *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (cleaned up).

[29] 20 C.F.R. § 404.1529(c)(3).

[30] AR 23.

[31] AR 23, 899.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

1

2

became stable.[32] Moreover, Plaintiff did not attend the recommended physical therapy for her claimed back and neck pain.[33] That Plaintiff's treatment for her back and neck was limited and that the prescribed anti-inflammatory and Tylenol reduced her symptoms were clear and convincing reasons to discount her reported symptoms.

### c.  Inconsistent Statements

An ALJ may discount a claimant's symptom reports if they are inconsistent with her prior statements.[34] Here, the ALJ discounted Plaintiff's reports of disabling back pain because she told the consultative examiner that she was comfortable lifting about 20 pounds, whereas during the administrative hearing Plaintiff reported that she could only lift about 5 pounds.[35] The ALJ's finding is supported by substantial evidence—Plaintiff's statements were inconsistent. This

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

---

[32] AR 23.

[33] *See, e.g.*, AR 856, 860, 1162, 1167, 1317 (prescribing Meloxicam for back pain), *and* AR 850, 1321–22 (recommending that Plaintiff do physical therapy if her back pain persists).

[34] 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

[35] AR 23, 898, 100–01.

1    was a clear and convincing reason to discount Plaintiff's reported lifting

2    limitations. Based on Plaintiff's statements to the consultative examiner, the

3    consultative examiner permitted Plaintiff to lift 20 pounds occasionally and 10

4    pounds frequently, which are the same lifting limitations as the light-work RFC.[36]

         d.    *Activities of Daily Living*

6         The ALJ may discount a claimant's reported disabling symptoms if she can

     spend a substantial part of the day engaged in pursuits inconsistent with the

8    reported disabling symptoms.[37] But "disability claimants should not be penalized

9    for attempting to lead normal lives in the face of their limitations."[38] "The Social

10   Security Act does not require that claimants be utterly incapacitated to be eligible

11   for benefits, and many home activities may not be easily transferable to a work

12   environment where it might be impossible to rest periodically or take

13   medication."[39] For these reasons, activities of daily living bear on a claimant's

14   symptom reports only if the level of activity is inconsistent with the individual's

15   claimed limitations.[40]

---

[36] *See* AR 901–02.

[37] *Molina*, 674 F.3d at 1113.

[38] *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (cleaned up)).

[39] *Smolen*, 80 F.3d at 1287 n.7.

[40] *Reddick*, 157 F.3d at 722. *See also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th

Cir. 2001) (The Ninth Circuit has "repeatedly asserted that the mere fact that a

Here, the ALJ found Plaintiff's activities of daily living inconsistent with her alleged standing and walking difficulties because Plaintiff reported that she walked and used public transportation to get around, shopped in using a pushcart, and moved into her own apartment.[41] Plaintiff argues that these cited activities do not serve as a clear and convincing reason to discount her difficulties standing and walking.

While such daily activities often are not sufficient to discount a claimant's reported walking and standing difficulties, here, Plaintiff reported that she walked (and took public transportation) in order to get around, including to her appointments and daily substance-abuse meetings (sometimes three meetings a day).[42] In addition, during her assessment with Merit, she reported that she likes to walk, camp, fish, and hike.[43] Therefore, on this record, it was appropriate for the ALJ to consider that Plaintiff's reported inability to walk and stand for longer than 20 minutes at a time was inconsistent with her daily activities.

---

plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

[41] AR 25.

[42] AR 16, 359, 756–77.

[43] AR 49, 68.

1
2
3
4
5

Plaintiff's activities—in conjunction with the objective medical findings, her self-reported improvement with Meloxicam, her failure to attend physical therapy, and her inconsistent statements about her lifting abilities—serve as clear and convincing reasons to discount Plaintiff's reported difficulties standing, walking, and lifting.

6          2.    Mental-Health Symptoms

7          The ALJ discounted Plaintiff's symptoms related to her PTSD, depression,
8
9
and panic disorder because she improved with treatment and she performed activities of daily living independently.

10                    a.    *Improvement with Treatment*

11          As mentioned above, an ALJ may discount the claimant's reported
12
13
symptoms if the symptoms improve to such extent with treatment that the claimant would be able to perform and sustain work.[44]

14          Here, the ALJ noted that Plaintiff had been treated with psychiatric
15
16
17
18
19
medications, mental-health therapy, and substance-abuse treatment.[45] The ALJ highlighted that—although at some appointments Plaintiff had poor hygiene, was anxious and depressed, was distractible with poor attention span, and her associations were tangential—Plaintiff mostly presented as appropriately dressed, with good eye contact and normal speech, was cooperative with normal insight and

20

21          _____

22          [44] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

23          [45] AR 24–25.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

judgment, and had normal mood, euthymic affect, memory, concentration, and attention span. Based on a comprehensive review of the overall medical records, the ALJ's finding that Plaintiff's mental-health symptoms improved with treatment is supported by substantial evidence. For instance, during a July 2018 evaluation, Plaintiff presented as disheveled with decreased eye contact, sad, anxious mood with constricted affect, some difficulty concentrating and with attention, difficulty with serial 7s, difficulty tracking interview questions, slightly tangential thought form, and fair to poor insight and judgment.[46] Though she continued to struggle with some depression, as Plaintiff progressed through counseling and medication management, the record reflects that her mood, affect, judgment, insight, concentration, and attention improved.[47] In June 2019, when Plaintiff transitioned from Cognitive Processing Therapy to Cognitive Behavioral Therapy, her therapist noted that Plaintiff's mood/affect, thought

---

[46] AR 770.

[47] *See, e.g.*, AR 912 (Nov. 2018: unremarkable thought process/orientation and behavior/functioning); AR 916, 930, 940 (Dec. 2018, Jan. 2019, Feb. 2019, Apr. 2019: unremarkable mood/affect, thought process/orientation, behavior/functioning); AR 918 (Dec. 2018: appropriately dressed, normal speech, attention span, concentration, and thought content, although lonely with tangential thoughts).

process/orientation, and behavior/functioning were all unremarkable.[48] And as the ALJ noted, Plaintiff reported that she was doing "really good" with treatment in the spring of 2020 at which time she was living independently.[49] Moreover, the treatment records rarely indicate that Plaintiff was anxious.[50] Accordingly, the overall record provides substantial evidence to support the ALJ's finding that Plaintiff's reports of disabling mental-health symptoms were inconsistent with her improvement with treatment.

Plaintiff argues that, even if her mental health improved at some point, the ALJ erred by failing to consider whether Plaintiff was disabled prior to the improvement. However, this case is different than that presented to the Ninth Circuit in *Smith v. Kijakazi*.[51] In *Smith*, the claimant's symptoms varied, and generally improved, during the years following his onset date and, therefore, the Ninth Circuit determined that given the significant variation in Smith's symptom severity over time, the ALJ erred by focusing solely on Smith's symptoms at the time of the hearing. Here, the record reflects that Plaintiff's mental-health

---

[48] AR 982–83.

[49] *See, e.g.*, AR 1181, 1190, 1217.

[50] *Compare* AR 921, 951, 967, 989, 1033, 1048 (The "anxious" box is not checked), AR 1055 ("does not appear anxious"); *with* AR 1138–41 (2013: presenting as anxious when reporting to emergency room with chest pain).

[51] 14 F.4th 1108, 1112-14 (9th Cir. 2021).

symptoms improved soon after receiving consistent treatment. Therefore, the ALJ appropriately discounted Plaintiff's mental-health symptoms because they improved with medication and therapy.[52]

Moreover, the RFC limited Plaintiff to uncomplicated work that could be learned within 30 days, did not involve hourly quotas or conveyor belts, and involved no more than occasional simple workplace changes.[53]

### b. *Activities of Daily Living*

As mentioned above, the ALJ may discount a claimant's reported symptoms if she can spend a substantial part of the day engaged in pursuits inconsistent with the reported disabling symptoms.[54] Here, the ALJ found Plaintiff's activities of daily living were inconsistent with her alleged disabling mental-health symptoms, as she was able to care for her personal hygiene and grooming, used public transportation, moved into her own apartment, cleaned, did laundry, prepared simple meals, went to church, spent time with sober friends, attended narcotics anonymous meetings, managed her finances, and spent time with her daughter.[55]

---

[52] *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.").

[53] AR 22.

[54] *Molina*, 674 F.3d at 1113.

[55] AR 25.

This range of activities, which included attending daily substance-abuse meetings, could rationally be inconsistent with Plaintiff's reported difficulties with anxiety, comprehension, and memory. However, the ALJ did not clearly explain this inconsistency. The ALJ must do more than list the activities and then state that such activities are inconsistent with Plaintiff's reported disabling symptoms.

However, this error is harmless because the ALJ clearly found Plaintiff's reported disabling symptoms inconsistent with her mental-health improvement resulting from therapy, medication-management, and other treatment.[56]

**B.    Medical Opinions: Plaintiff fails to establish consequential error.**

Plaintiff challenges the ALJ's consideration of the medical opinions from Dr. Drenguis, Dr. Hurley, Dr. Mansfield-Blair, and Dr. Bowes.

1.    <u>Standard</u>

The ALJ was required to consider and evaluate the persuasiveness of the medical opinions.[57] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[58] Supportability and consistency are the

---

[56] *See McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (specifying that remand is not appropriate when the harmlessness of the error is clear).

[57] 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b).

[58] *Id.* §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

most important factors, and the ALJ is required to explain how both factors were considered.[59]

       2.   <u>Dr. Drenguis and Dr. Hurley</u>

In 2019, Dr. Drenguis reviewed identified records and conducted a physical examination of Plaintiff.[60] Dr. Drenguis diagnosed Plaintiff with degenerative changes of the cervical and lumbar spine, decreased hearing on the left side worse than the right side, and a history of anemia and fatigue, which was suspected of causing chronic iron loss. Dr. Drenguis limited Plaintiff to a maximum of 2 hours of standing and walking, 6 hours of sitting, frequent lifting of 10 pounds, frequent balancing, frequent reaching overhead and forward, working around excessive noise, and occasional lifting of 20 pounds, climbing, stooping, crouching, kneeling, and crawling,

Two weeks later, Dr. Hurley reviewed the medical record, including Dr. Drenguis' opinion. Dr. Hurley largely agreed with Dr. Drenguis, including his opinion that Plaintiff be limited to standing and walking 2 hours each workday.[61]

The ALJ found Dr. Drenguis' opinion persuasive except the ALJ found Dr. Drenguis' standing and walking restrictions overly restrictive because Dr. Drenguis observed Plaintiff to have normal gait and coordination, Plaintiff did

---

[59] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

[60] AR 897–902.

[61] AR 152–56.

not use an assistive device, other examinations showed normal gait and full range of motion in the extremities, and Plaintiff did not obtain significant treatment for DDD.[62] The ALJ likewise found Dr. Hurley's standing/walking restrictions overly restrictive for the same reasons.[63] Instead, the ALJ found Dr. Martin's opinion that Plaintiff could perform light work, i.e., could stand/walk for up to 6 hours each work day with postural limitations, persuasive.[64]

Whether a medical opinion is consistent with the longitudinal record—including the medical findings and observations and treatment—is a factor for the ALJ to consider.[65] Here, although a claimant need not use an assistive device to be limited to sedentary work, the ALJ's decision to discount Dr. Drenguis' and Dr. Hurley's standing/walking restrictions was meaningfully explained and supported by substantial evidence. Plaintiff routinely had a normal gait and normal range of motion in her extremities, she did not seek physical therapy for her DDD, and the prescribed Meloxicam stabilized her back pain.[66] And Dr. Martin

---

[62] AR 26.

[63] AR 25.

[64] AR 25–26.

[65] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[66] *See, e.g.*, AR 850 (referring to physical therapy); AR 1322 (referring to physical therapy and noting that Plaintiff's back pain was "stable" and that her pain is "aggravated by bending, lifting, sitting and twisting. Symptoms are relieved by

found, "She has some DDD in her cervical and lumbar spines but no radiculopathy and some mild DJD in her S-I joints. The available [medical evidence of record] support[s] her being able to perform light work with the limitations listed in this RFC."[67] The ALJ's decision to adopt Dr. Martin's standing/walking recommendation rather than Dr. Drenguis' and Dr. Hurley's recommendation is supported by substantial evidence.

        3.     <u>Dr. Mansfield-Blair</u>

In February 2019, Dr. Mansfield-Blair reviewed some records and conducted a psychological examination of Plaintiff.[68] Dr. Mansfield-Blair diagnosed Plaintiff with PTSD, major depressive disorder, generalized anxiety disorder, stimulate-use disorder, cannabis use disorder, and borderline personality disorder. Dr. Mansfield-Blair opined that Plaintiff would have difficulty dealing with the usual stress encountered in the workplace, maintaining regular attendance and completing a normal workday and work week without interruption from a psychiatric condition, and performing simple and repetitive tasks, detailed and complex tasks, and work activities on a consistent basis without special or additional instruction.

---

movement, pain meds/drugs, and rest"); AR 923, 952, 1076, 1107, 1122, 1126, 1141, 1420 (normal gait and station); AR 900 (exhibiting normal gait and ability to tandem walk, walk on heels and toes, stand on a single foot, and hop).

[67] AR 212.

[68] AR 904–10.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

     The ALJ found Dr. Mansfield-Blair's opinion somewhat persuasive.[69] The ALJ agreed that Plaintiff has work-related limitations due to her mental impairments but that the treatment records indicated that Plaintiff experienced improvement with treatment, including reported sobriety since 2018, and that Plaintiff routinely was observed with appropriate mood and affect, intact memory, and good concentration, attention, judgment, and insight.[70] The ALJ's finding is supported by meaningful analysis and substantial evidence. As previously discussed, although the record reflects waxing and waning of Plaintiff's mental-health symptoms, Plaintiff's symptoms improved when she received consistent medication management and therapy.[71]

---

[69] AR 27.

[70] *See, e.g.*, AR 951–52 (noting that even with racing thoughts, Plaintiff's thought process, cognition, attention span, concentration, and ability to follow instructions was not impacted); AR 1169 (orientated with normal mood and appropriate mood and affect); AR 1250–51, 1281–82, 1293 (happy/normal mood with congruent affect, good concentration and attention span, normal thought content and process, good insight and judgment, and normal fund of knowledge).

[71] *See, e.g.*, AR 546, 841, 989–90, 1012, 1169, 1208–09, 1250–51, 1270–71, 1280–81, 1293–94, 1400.

4.    <u>Dr. Bowes</u>

In June 2018, Dr. Tasmyn Bowes, Psy.D., conducted a psychological examination.[72] Dr. Bowes diagnosed Plaintiff with PTSD, generalized anxiety disorder, major depressive disorder, panic disorder, meth use disorder (early remission), and borderline personality disorder. Dr. Bowes opined that Plaintiff was markedly limited in her abilities to communicate and perform and maintain appropriate behavior at work, set realistic goals and plan independently, and complete work without interruptions from psychologically based symptoms.

The ALJ found Dr. Bowes' opinion was not persuasive because it was based on a one-time evaluation, it was inconsistent with Dr. Bowes' observations, and it was inconsistent with the objective medical evidence.[73]

First, that Dr. Bowes' opinion was based on a single evaluation was not a legitimate factor by itself to find Dr. Bowes' opinion unpersuasive when the ALJ found persuasive the reviewing opinions of Dr. Lewis and Dr. Moore, who had not evaluated Plaintiff. However, the ALJ legitimately considered that Dr. Lewis and Dr. Moore benefitted from reviewing longitudinal medical records, which reflected improvement of Plaintiff's mental-health symptoms with treatment.

Second, the ALJ's finding that Dr. Bowes' marked limitations were inconsistent with her observations is supported by substantial evidence. Dr. Bowes

---

[72] AR 755–60.

[73] AR 27–28.

noted that she observed Plaintiff with adequate eye contact and basic grooming, that she was cooperative although briefly tearful, and that she had normal speech, logical thought-process, and normal perception and memory, but that Plaintiff's fund of knowledge was inadequateand her abstract thought, concentration, and insight/judgment were abnormal given her answers.[74] As to the concentration component of the test, Dr. Bowes said, "See Trails and MSE," which in turn mentions that these tests were not completed by Plaintiff because she "can't really see those – I need glasses."[75] The ALJ's finding that Dr. Bowes did not adequately connect her observations with the marked limitations as to communicating and performing effectively in a work setting, maintaining appropriate behavior in a work setting, completing a normal work day and work week without interruptions from psychologically based symptoms, and setting realistic goals and plan independently is supported by substantial evidence. Moreover, Dr. Bowes' observations are consistent with the assessed RFC limiting Plaintiff to uncomplicated work that can be learned in 30 days, does not involve hourly quotas or conveyor belts, and involves no more than occasional simple workplace changes.

---

[74] AR 760.

[75] AR 757, 760.

And as previously mentioned, Plaintiff's mood, affect, judgment, insight, concentration, and attention improved with counseling and medication management.[76]

## V.    Conclusion

Plaintiff fails to establish that the ALJ consequentially erred. The ALJ's nondisability findings are supported by explanation and substantial evidence.

Accordingly, **IT IS HEREBY ORDERED**:

1.     Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2.     The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3.     The Clerk's Office shall enter **JUDGMENT** in favor of the **Commissioner**.

4.     The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 29th day of March 2023.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge

---

[76] *See, e.g.*, AR 912, 916, 918, 930, 940.